If I'm understanding this correctly, I think Ms. Thayer, you'll have 20 minutes for Mr. Reed, then Ms. Obermeyer, you'll have 5 minutes for Mr. Spence, and Ms. Cleary, you'll have 5 minutes for Mr. Golden. I think the clock will reflect that time difference, and Ms. Thayer, if you want to reserve time for rebuttal, please watch the clock. Yes. Thank you, Your Honors. Kristen Thayer for Appellant Deonte Reed. Counsel for Reed, Spence, and Golden are prepared to answer any questions the Court may have on any matter, but I would like to outline quickly our plan for the split time. With my 20 minutes, I will briefly address which framework applies to the constitutional error here, but second, I'll address that it doesn't really matter what framework the Court applies because reversal is required under the Brecht Harmless Error Standard. Counsel for Spence and Golden will address the harmlessness analysis specific to their trial, and then with any time I've reserved, I will handle rebuttal for all defendants. So first, the proper legal framework to apply when there's an ambiguous predicated issue for a 924C conviction is an issue of first impression for this Court. Dominguez did not decide the issue. Dominguez addressed when two predicates were the basis for the conviction, not when we're not sure which one was the basis. And simply, the argument is simple, that this is a Davis error. The Supreme Court said in Davis that the categorical approach controls the element concerning crime of violence or drug trafficking offense. So it is a pretty straightforward application of the categorical approach, the three steps, to resolve the error here in Reed's favor, and that's just the result of an ambiguous record set of Shepard documents means that the defendant must prevail because the government  In asking us to apply the categorical approach here, I think you are asking us to disagree with, it sounds like the Fourth Circuit, the Eleventh Circuit, perhaps others on this issue? Yes, Your Honor, and the reason is because those courts haven't adhered to Davis, which is the most recent pronouncement, both on, well, specifically the categorical approach and how it applies to 924C. Davis had a lot of analysis rejecting the government's position that a factual inquiry by the jury would be enough to support that element, and they said a facts-based approach to the crime of violence or drug trafficking offense element is not permitted. It must be a legal determination by the judge. So our position is more consistent with Davis than those circuits. Counsel, what's your response to the assertion that you're taking what started as a sentencing inquiry and now transferring it to a different context for which Shepard-Taylor was never intended? I understand, yes. The origination of the categorical approach, of course, was ACCA sentencing enhancements, but Davis was a 924C case from the Supreme Court, and it made clear that it's the same analysis for the 924C conviction, which essentially is, you know, once the defendant is convicted of a 924C, it's a mandatory sentence. So effectively, it is a sentencing enhancement because it's a mandatory sentence once the conviction is obtained. But Davis makes clear, the Supreme Court made clear that it's the same analysis. But I'll move to the other issue because, really, this court doesn't have to grapple with that and can save that issue for another case because the government hasn't met its burden to persuade this court that the error was harmless here. Everyone agrees that there's unconstitutional aspect of this jury instruction. The jury should have never been allowed to base the 924C conviction on Hobbs Act conspiracy. Now to decide whether that is harmless, the court considers whether the jury did convict based on the valid theory of the drug trafficking offense. It's not whether they could have. It is not whether there is sufficient evidence that a rational jury could have convicted based on that drug trafficking offense. And that is the problem with the government's position, is it really just sort of tries to simplify and collapse the record down into a sufficiency analysis that the jury could have based the 924C on the drug trafficking because the defendants were all convicted of that conspiracy. And therefore, this court should affirm. Is it more than just could have? Is it that there's no real logical explanation other than that it did? I mean, just the nature of the crime. So no, you're at two points to that question. So first, because the analysis considers the offending jury instruction in light of the evidence and arguments at trial. So I'll first start with the jury instruction and why it doesn't permit the government's argument. So the jury instruction states that the jury must find the defendant committed either Hobbs Act conspiracy or drug trafficking conspiracy, and they all must agree as to which crime the defendant committed. And so the jury was instructed that way to pick either or and be unanimous as to which crime in the singular. Then you turn to the evidence, the argument and the evidence at trial. And of course, it makes sense that the government's focus was on Hobbs Act, the conspiracy for the robbery, because that was the first in time event that to obtain the drugs by use of the guns was the focus. And obtain, that's a significant word because that's in the instructions for the Hobbs Act conspiracy. That's the language for robbery is obtaining something. Possessing with the intent to distribute, of course, is the drug trafficking conspiracy. The government didn't tie the gun to that second, the possessing with intent to distribute conspiracy. Isn't it? I mean, it seems like we're trying to disaggregate events that were all combined. It was a robbery to obtain a significant amount of cocaine that it's more than reasonable to think would be distributed because it was so much cocaine that it vastly exceeded personal use. And so doesn't it seem difficult to break these down to sort of two different crimes? It seems intertwined. So I agree, Your Honor, that it's more difficult for us as law trained individuals that we all understand that, of course, you know, that Reed possessing the drugs, you know, if it all would have gone down the way it was planned, that at that moment, that's the drug trafficking, even without sort of like common language distribution later. But that's not the case that was presented to the jury. The government did, to the extent they focused at all on the drug distribution aspect, they did present that the plan was going to be to split the drugs afterward at the shop and everyone would, quote, take care of them, you know, each side would take care of themselves. So we have to view this from, and the Supreme Court is very clear in O'Neill versus McAnich, which is a very helpful case as to this analysis, is that you have to put yourself in the place of a jury, a lay jury, that's hearing all of this evidence and trying to parse things out, trying to follow their instructions as we presume they do. You cannot be reasonably certain here that the jury understood and found beyond reasonable distribution at the shop, which is how the drug conspiracy was presented to the jury in the testimony by the officers, the agents. And so at most, the opening and closing arguments just summarily reference the drug trafficking could underlie the 924C as well. But turning back to O'Neill versus McAnich, that course, the Supreme Court recognized there that when the record is evenly balanced on the issue and we don't know which theory the jury chose, the valid, the invalid, that requires remand. The risk of doubt is in, the government carries that, the case law is clear. It's not, if we think the jury could have relied on the drug trafficking, isn't enough. The government, we have to be certain that they did, reasonably certain that they did. And this, also in that case, O'Neill, it recognized that even when there's sort of an equipoise situation, that's the term of art that they used, that that doesn't mean the court can affirm, the court must reverse at that point. Because at bottom, this is a Sixth Amendment violation. So this is a jury verdict issue. It's not a normal sufficiency of the evidence analysis, where there's a valid conviction, but we're challenging whether the evidence was sufficient, and that's a very deferential review. This is a constitutional violation in the jury instruction that has affected the jury's verdict. And that's why the inquiry is so searching. This is not, as the reply group said, it's not a splitting hairs. That's actually what the analysis requires, is that if there's grave doubt that the error, whether the constitutional error had a substantial and injurious effect or influence on the jury's verdict, that the court must reverse the conviction. And I see I have 10 minutes, but if the court does not have any questions, I can reserve for rebuttal and let my colleagues. I have one question, Counsel. After the briefing was completed in this case, the Supreme Court decided Brown v. Davenport, that was in a 2254 context, not 2255, so I want to ask you if it matters, where the Supreme Court said, not only do you have to satisfy Breck, but you have to analyze AEDPA. Does that have any bearing in a 2255? I am not familiar with Brown, but what I would think is what they were talking about is sort of the standards that are specific to 2254s about deference to a state court and all of the complicated rules that trigger whether there's deference or de novo review by a federal court. So none of that would apply here. It is a much more straightforward analysis for this court because it's a 2255. 2255s are more rare, at least in the case law and at the Supreme Court. So it is the same Brecks analysis. It is that same very searching inquiry to the record, but we do not have the same issue here of deference to the district court. Everyone agrees it's de novo. Thank you. Thank you. And I'll reserve the rest of my time for rebuttal and allow my colleagues to address their case. Thank you. Thank you. Good morning. May it please the court. Wendy Overmeyer for Justin Spence. And I'm here to discuss particularities as to Spence and Golden's trial. They were tried jointly, but separately from Reed and also from Jackson, who was acquitted of the 924C charge. And one of the differences at their trial really was just factual allegations, differences about the level of involvement. But the same Davis error occurred at the Spence and Golden trial as it did with Reed. It's the same unique jury instruction that was given in this case. And I've looked at all the cases cited and some not cited, and I cannot find any other case with an ambiguous 924C where they were given this precise instruction that it be either or with you unanimous as to which crime. And so I think that's a very distinguishing point of this case and why relief is warranted for these particular defendants. Does it matter that one of these conspiracies logically doesn't exist without the other? Well, the conspiracy, they're certainly close in time, but they are different objects of these conspiracies. And the robbery agreement for the robbery ends, I believe, at the moment that the loot was obtained from this home. And then the agreement for possession with intent to distribute then was to take these in a van back to the tattoo shop where it would be split. And certainly the firearm was not alleged to further that agreement. The firearm was alleged to facilitate the robbery. And we know this because of the key witness testimony. Agent Zayas was actually the agent that created this sting operation with the ATF back in the 90s. And he testified he did this to combat home invasions. That's what they were trying to prevent. And that's what the government's focus on at trial is that they were focused on catching people who would commit armed home invasion robberies in residential areas. And they wanted to protect homeowners and family members from very dangerous situations where someone would enter a house armed. And Agent Zayas testified that he decided to include this cartel scenario to kind of lower the danger levels. And to weed out, in his view, to those who would only be willing to commit a dangerous type of robbery and impose, quote, what the government said at closing, it demonstrates the greatest risk of violence to the community. Are there any factual differences presented for Spence and Golden vis-a-vis Reed that are different, especially with respect to the drug trafficking conspiracy charge? They were both, like Reed, they were convicted of conspiracy to commit drug trafficking. And there was, I don't believe there's any factual differences when it comes to the issue in this case, to the Davis error in this case. The jury found what it found, it found they were both guilty of those conspiracies. But then what the jury wasn't required to show is which of those it based the 924C on. And nothing in the record suggests that the jury relied only on the drug conspiracy for the 924C. And that's the standard. It's a high standard. And what the government is asking is to presume the jury did what it was not affirmatively told. It was not affirmatively told it could find both. And that typically does appear in these type of cases. It could have found both. I mean, the instructions certainly permitted that. Well, it didn't affirmatively tell them that it could be both. So that would be presuming the jury did something that they were not affirmatively told they could do. And that flips that presumption that jurors followed the instructions as given by the court on its head. There are plenty of cases where they were told it could be both. And those are different than this case. In this case, they were not affirmatively told they could find both. But they were told they had to be unanimous as to which crime, singular, one crime, they committed. And that's what we don't know. And so that is why we're asking you to reverse Spence's 924C and his five-year mandatory sentence. Thank you. Good morning. May it please the Court, Amy Cleary on behalf of Stephen Golden. I would like to focus this morning on the last meeting at which all three defendants met together in the government's closing argument. Because I think it really helps show that the government's case in this matter in Stephen Golden's and Justin Spence's trial, just as with regard to Mr. Reed's trial, really focused on the armed robbery. On the day of the last meeting at which all three defendants were present and government's exhibit 8A and 8B, which is the four-minute audio recording and the transcript, Agent Zayas is telling, and this is the only time in this entire proceeding that Stephen Golden was present and has heard to say anything. Agent Zayas is telling the defendants what is going to happen. And what he's focusing on is that the people, there's going to be two people at the home. One of them's going to have a gun. Did you tell, speaking to Mr. Reed, did you tell them that he's going to have a gun? This is what we're going to do. We're going to hit it, meaning we're going to rob it. And this is how it's going to transpire. Now, this was the only meeting that the defendants were put together. This was the meeting that was going to occur right before the arrest was to take place. And this was the meeting that was the focus right before they were arrested. There was no discussion during that as to using any firearms for any drug distribution. The use of the firearms was specifically for the robbery and to take the drugs from the stash house. That was completely understood by Agent Zayas as he explained it to the defendants. And Mr. Golden's response to that, according to the government, was, yeah. Isn't it understood, though, that firearms are tools of the trade in drug distribution? Conceivably. But as presented by the government and to the jury and the evidence and the arguments, the guns in this case and the conspiracy were all directed towards the robbery. And when the government, during closing arguments, when it was challenged that there was no guns used in furtherance of any crime, I think it's very important to see what exactly the government founded in its closing rebuttal. The government says, ladies and gentlemen, I would suggest to you that the evidence in this case shows that the people here were going into an armed robbery situation. Someone on the Reed side, whether it was Reed, whether it's Golden, Spence, or Jackson, is going to be carrying a firearm in order to take 22 to 39 kilos of narcotics away from The government was very specific that the guns were going to be used only for the robbery. So when the government asked the jury for a verdict, the jury returned the verdict for what the government was asking for, which was, as instructed in the jury instructions, to choose one of the conspiracies, if they found that the government had proved was used in furtherance with the firearm, and that was the robbery conspiracy. They were convicted of conspiracy with intent to distribute cocaine. That conviction isn't challenged here, and the gun is being used contemporaneously with the process of acquiring cocaine. That was the whole point of this operation, was to go in and to get the cocaine, and then to do something with it thereafter. It wasn't just to go there and cause mayhem in and of itself. It was to actually acquire valuable drugs. None of the counsel dispute that there was convictions for the robbery separately for the conspiracy for robbery, conspiracy for the drug distribution, but the actual in furtherance of with intent to distribute. The only evidence and arguments that was ever presented was to in furtherance of the robbery. There was nothing else that the jury could have based it on, because that's the only evidence that the government presented to them, and that as instructed by the instructions that both at Reed's trial and at Mr. Gold and Mr. Spence trial, that was the only thing that the jury could have chosen based on the evidence that was presented. At that meeting, didn't Agent Zias, in addition to saying that we're going to hit it, also said that we're going to split it? Correct. When they come in there, go there with guns, and they're going to hit it and split it, I think that evidence there that you could infer that the gun will be used in furtherance of the drug trafficking conspiracy. One of the things that we need to do is we need to ask, did the jury, what did they do? And to infer that the splitting somehow used firearms that were never discussed when it would have been a splitting situation amongst a crew at a separate location where that was never discussed in any sort of plan where it would have been, and I'm going to use this term, a friendly environment, not an emboldening situation, as compared to the robbery situation where we know that that was the plan to go in and try to go in and overtake. That is not something that the case law allows us to do. We can't make those types of inferences. We have to ask, is there a reasonable certainty that that's what the jury would have done? We can't expect that the jury would have made those types of inferences. And for those reasons, unless the court has additional questions, we ask that you vacate the 924C conviction from Mr. Golden as well. Thank you. Good morning. May it please the court, Peter Walkinshaw on behalf of the United States. I think I'd like to first just briefly address the defendant's suggestion that Shepard is the appropriate analysis for this court to follow with respect to this crime. I think the court really need to look no further than part three of the Supreme Court's decision in Shepard itself, where it explains the driving concern that caused the court to limit the enhancement. It's a Sixth Amendment concern, that when an ACCA sentencing enhancement is applied, it raises both the floor and the ceiling of criminal liability to which a defendant is exposed without a jury finding a disputed fact. So that's the Almendore's-Torres exception to the general rule following the Alleen and Apprendi line of cases, that a jury needs to be involved in that decision. That's not present here, because what the defendants are challenging is a jury verdict. There's no concern about expanding the Almendore's-Torres exception to the Sixth Amendment rule, that jury needs to find the disputed fact, expanding criminal liability, because the party that imposed the decision that exposed these defendants to increase criminal liability in the form of a 924C conviction was a pair of juries, one in each trial. Unless there are questions on the framework, I'll move on to the particularities of the harmlessness analysis. On that, as you get into it, I mean, the other side points to jury instructions, I think suggests that the jury could only find A or B, but not both. How do you address that? I don't think that's warranted from the wording of the jury instruction, Your Honor. I think it does say either or, it does not say but not both, and I think it's important as we sit on a brief step back and take a look at how that jury instruction is framed, and it's what the government must prove to obtain a conviction. What the court's explaining to the jury there is the floor, not a ceiling. I think if read the way that defendants would have the court read the instruction, it seems to suggest that if both predicates were furthered by a firearm that the jury should acquit, that the government somehow would not be able to win its case by proving both, and that's just a sort of absurd interpretation that I think the language of the instruction simply doesn't bear. Unless, Your Honor, there's further questions on that point, I'd just note briefly, with regard to the standard, I believe Counsel for Reed said it's important to note that this court can't affirm the conviction if it's what the jury might have found or could have possibly found. I think it's important to take a look at the district court's decision in denying the 2255 motion here, in which it concluded properly, because Judge Dawson was the judge who not only considered the 2255, but also presided over both trials and heard all the evidence. What his conclusion was, was that no rational jury could have based the 924C conviction on the robbery conspiracy to the exclusion of the drug conspiracy. I think Judge Fitzwater's question on this point was exactly correct. These two predicates are inextricably intertwined, as the parlance of several other circuits states, and particularly in this case, I think it's important to note that the robbery conspiracy was entirely a subset of the drug conspiracy. The object of the robbery was to, we said in our briefs, obtain, and the defense takes some issue with the fact that obtaining is not an element of the drug conspiracy. Another way to put it is to take possession of a massive amount of cocaine. I think it's important to reiterate that, I think this is glossed over a little bit, the drug conspiracy charge was not a distribution conspiracy. It was a conspiracy to possess with the intent to distribute. So I think it's just impossible to say that robbing these drug dealers of their cocaine is an essential part of a conspiracy to possess cocaine with the intent to distribute it. I think the line of argument here fundamentally misunderstands the nature of conspiracy. I think the defense has argued that the possession conspiracy didn't be, would not have begun until the defendants got back to the tattoo shop and divvied it up. Now setting aside the fact that defense would have possessed the drugs on the way from the stash house to the tattoo shop, by that same logic, the guns couldn't have furthered the robbery conspiracy because the robbery had not begun at that point. The question the court needs to ask is, did these guns further the illegal aim of the to rob the drug dealers and take possession of cocaine? And given the particular factual circumstances in this case, which are essentially identical to the factual circumstances in United States v. Cannon, the 11th Circuit case that we cited, there's simply no way that the guns could have furthered the robber conspiracy and not the drug conspiracy. And what is the standard you're advocating for assessing the two predicate crimes? Is it the inextricably intertwined standard or something else? Well, Your Honor, I think in this case the court can't affirm on that basis if it finds that the two are inextricably intertwined. I think that the Breck standard, which in terms of the Supreme Court's Breck decision is a little unusual in that it explicitly disclaims framing it as a burden. It says that it would be inappropriate to do so because no new evidence is being introduced. It should be framed as a judge looking at the record and determining whether or not there's a grave doubt. This court subsequently, and I believe Valerio v. Crawford and Gray v. Clauser, which was subsequently overturned by the Supreme Court but on other grounds, they've said that the burden effectively, what that means is the burden rests with the government. If there is a grave doubt in the court's mind that the error was harmful, then the benefit does enter to the defendant. But putting some meat on that particular bone, what this court has also said is what the government needs to provide is a fair assurance. And Gray v. Clauser, I think it said significantly more than 55 percent sure that the error was not harmful. I think this particular case doesn't necessarily implicate a situation in which the standard really needs to be refined down clearly. And I'd say that because in the Cannon case out of the 11th Circuit, that was a direct appeal in which an objection was made at trial. And so the standard imposed in that case, again, on a factual situation that was essentially identical to the one here, that court found that it met the Chapman standard that it was harmless beyond a reasonable doubt. And I'd say that the record certainly bears that out in this circumstance. But the appropriate standard is the lower Brecht standard of fair assurance. Is there any, as to the three defendants here on this question of inextricable intertwinement, is there any differences among them in your view that you would acknowledge? No, Your Honor. I believe Counsel for Golden, I think, did correctly identify the key piece of evidence that determines whether or not there are significant differences between them, which is the speech that Agent Zias gave to the defendants immediately before going to the planned robbery meetup site in which he reiterated what the content of the conspiracy was and everyone agreed to it. And following that sort of reiteration of what the plan was in the defendant's arrest, all the defendants were convicted of both predicates. So it's simply, it would not be possible for this court to find that any of the defendants did not knowingly participate in the drug conspiracy that ultimately subsumed the robbery conspiracy and forms the basis for the valid predicate. So we would urge, Your Honor, I think that obviously we would urge the court to affirm on all three, and I think there's no basis for distinguishing between these defendants as to relative levels of culpability or really any other basis. I may be mispronouncing this name, but this came up in the briefing from the other side about the sangling defendants and the fact that they had a similar situation, they seemed to be being, have a different outcome, and why don't you educate us on that? So Your Honor, I'll be honest, I was not involved in the decision as to whether or not to appeal the sangling decision. What I can say, and as I believe the court is probably aware, the decision for the government to affirmatively appeal an adverse ruling is a complicated one. It needs to be submitted to the Solicitor General of the United States for approval, and there are a lot of considerations that go into that analysis. Not all of them are, was this decision correct or not? And while I can't say what the particular considerations driving the decision not to appeal sangling were, what I can say with absolute confidence based on my discussions within the office regarding this case, it's not that the government has any sort of view that sangling was correctly decided. Obviously, sangling is not biding on this court, it's a district court decision, and I'm perfectly happy to say in front of this court today that sangling was wrongly decided. This court shouldn't follow it. Unless the court has any further questions, I will rest on my briefs. Thank you. Thank you. Thank you. Do you want to address this sangling issue? Yes, Your Honor. It's not really an issue on appeal, but it was raised in the briefs, and what's your perspective? Yes, Your Honor. Sangling was properly decided very early on, after Johnson came down from the Supreme Court, and the district court in that case got it right, that the inextricably intertwined aspect isn't present in this case because the jury instruction is different than what was given in Cannon and other out-of-circuit cases the court gave. So it's my understanding sangling had the same jury instruction of either or being unanimous to both. It didn't say or being unanimous as to the crime. It did not say or both. And after the court, you know, reviewed this, I don't know, of course, like the openings, closings, all the evidence in sangling, but after the court in that case did, for both of those defendants did that searching inquiry, the court said they could, they were still griped out. Did the court apply the categorical approach to this, or it did the Brecht harmless error? I believe in, I forget which one, I think in sangling it was more of a categorical approach because at that point the government, similar to this case, the government never argued harmlessness. They just argued that Johnson didn't invalidate 924C's residual clause when we first filed the motions to vacate. So the court decided it on the categorical approach because the government wasn't challenging that aspect. But then in the Flores decision, I believe there was more analysis as to, and also this is not harmless, even if I were to review the trial. And so I touched on it briefly, just two points on rebuttal, but the first point is Canon is the main case the government relies on out of the 11th Circuit. And the inextricably intertwined analysis there actually makes sense in light of the jury instruction. Like you can't separate the jury instruction from what happened at trial. So in a case where there are conspiracies that are overlapping, like Canon was a reverse sting, which does distinguish it because those are more sophisticated defendants who were actually trying to plan the robbery and roped in a CI who then got the ATF involved. But setting that aside, the conspiracies overlapped in that case and the jury was instructed you can rely on both. So it makes sense that the outcome in that case was the court was recently assured that the constitutional error was harmless. But here we just don't have that language. And it's not that we're arguing that the jury was absolutely precluded from going above and beyond and saying, well, let's vote as to are we unanimous on robbery, are we unanimous as to drug trafficking. It's just that when you read this jury instruction, this is either or, pick one basically, and then you view the trial, the way that the case was presented to the jury, that there should be grave doubt as to whether the jury did do that, whether the jury did go above and beyond and vote to be unanimous as to both predicates. Because, and this is my second point, as presented to this jury, the robbery did not fully subsume the drug trafficking conspiracy. So there is a temporal distinction and the government chose to present its case that way with the focus being on the armed robbery to obtain the drugs and then the drug trafficking offense was presented as, and we talked about splitting it, going back to the shop and splitting it after. And like I said at the beginning, I understand that as law-trained individuals, we know that the drug trafficking conspiracy could be fully completed at the moment they planned to rob and take the drugs, but that's not how it was presented to the jury. It was presented as two distinct conspiracies and more importantly, the overwhelming focus was on robbery and the jury wasn't instructed or, and it was never argued to them, that the drug trafficking conspiracy is completed upon possession. And so the court must take the case that was presented to the jury and not sort of what we all understand would have been sufficient for a jury instruction. And for those specific reasons of how the case was presented to this jury in light of this instruction, the court should. Can I ask one point of clarification before you sit down? Absolutely. Which is, are you asking us to, are you saying that the jury instructions provide a sufficient basis for you to win or are you saying that the jury instructions in combination with the evidence at trial and the way in which the case was presented, all that together is what's sufficient? So if we're looking just at the Brecht harmlessness analysis, then it's the whole thing. So it's kind of, the way the cases discuss it is viewing the erroneous instruction in light of what happened at the trial, all from the juror's perspective. So you can't separate any of the pieces, you know, the argument, the testimony, and then the closing instructions. But you need to presume that the jury followed these instructions and that, what does that mean in light of what was presented to them? And here that means that we can be very sure that the 924C was based on the robbery conspiracy, but we cannot be sure that it was also based on the drug trafficking conspiracy. Okay, just to make sure I understand, so you're, I just want to make sure I'm appreciating your, on the jury instruction, I don't hear you saying, look, it doesn't matter how the rest of the case was presented, solely on the face of that instruction we win. You're not saying that? I think that goes more towards, if the court were inclined to apply just the categorical modified record document review, yes, I mean that jury instruction combined with a general review leaves the question completely ambiguous. So under that separate analysis, yes, that would be sufficient. But if this court, you know, reaches the Brecht harmlessness analysis, then yeah, the court must review all of it. And like you said, it's not that the jury was ordered, you absolutely cannot base this on both, but you have to read the jury instruction how the jury would have after they just heard all of this evidence. And that's just why there is great doubt after conducting the analysis specific to this case, it's not generally based on Stash House cases. But we'd ask that you reverse. Thank you very much, Your Honors. Thank you. Thank you all for a very helpful argument. The case has been submitted and we are adjourned for the day.
judges: LEE, BRESS, Fitzwater